IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ANCOR HOLDINGS, LP, by and through its general partner, ANCOR PARTNERS, INC.<br><br>Plaintiff,<br><br>v.<br><br>LANDON CAPITAL PARTNERS, LLC, ICON EV, LLC, and NEXGEN LITHIUM BATTERIES, LLC<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. _____ |

## ORIGINAL COMPLAINT

Plaintiff Ancor Holdings, LP, by and through its general partner, Ancor Partners, Inc., files this Original Complaint against Defendants Landon Capital Partners, LLC, ICON EV, LLC, and NexGen Lithium Batteries, LLC and states as follows:

### I.
### INTRODUCTION

1. This action arises from the Defendants' breaches of written contracts and breaches of their duties of good faith and fair dealing. After Ancor Holdings, LP brought all the parties in this lawsuit together for the purposes of recapitalizing ICON EV, LLC and NexGen Lithium Batteries, LLC, and did all the work to close the deal, Landon Capital Partners, LLC conspired with ICON and NexGen to cut Ancor out of the deal. Such action was a breach of Ancor's agreement with Landon and a breach of ICON and NexGen's duties of good faith and fair dealing.

### II.
### PARTIES

2. Ancor Partners, Inc. is a Nevada corporation with its principle place of business in Southlake, Texas. Ancor Partners, Inc. is the general partner of Ancor Holdings, LP, a limited

ORIGINAL COMPLAINT--Page 1

partnership which is doing business as Ancor Capital Partners. Ancor Partners, Inc. brings this action as the general partner of Ancor Holdings, LP. Ancor Partners, Inc. and Ancor Holdings, LP are referred to herein collectively as "Ancor."

3.      Landon Capital Partners, LLC ("Landon") is a Delaware limited liability company whose principle place of business is 21 Custom House Street, Suite 700, Boston, Massachusetts 02110. Landon may be served with process through its registered agent The Corporation Trust Company located at the Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

4.      ICON EV, LLC ("ICON") is a Florida limited liability company whose principle place of business is 203 Kelsey Lane, Suite E, Tampa, Florida 33619. ICON may be served with process through its registered agent Joshua A. Law located at 111 South Blvd., Tampa, Florida 33606.

5.      NexGen Lithium Batteries, LLC ("NexGen") is a Florida limited liability company whose principle place of business is also at 203 Kelsey Lane, Suite E, Tampa, Florida 33619. NexGen may be served with process through its registered agent Roy Williams located at 203 Kelsey Lane, Suite E, Tampa, Florida 33619.

### III.
### JURISDICTION AND VENUE

6.      This Court has diversity jurisdiction over this action pursuant to 28 USC § 1332 because the parties are completely diverse and the amount in controversy exceeds $75,000. Ancor Partners, Inc., is a Nevada corporation with its principal place of business in the Northern District of Texas. Each of the limited partners of Ancor Holdings, LP are individuals who are also Texas citizens. Landon is a Delaware limited liability company whose principle place of business in in Boston, Massachusetts, and on information and belief, none of the members of Landon are citizens of Nevada or Texas. Similarly, ICON and NexGen are Florida limited

ORIGINAL COMPLAINT--Page 2

liability companies, and on information and belief, none of their members are citizens of Nevada or Texas.

7.     This Court has personal jurisdiction over Landon, ICON, and NexGen because these entities were, for purposes of the transaction at issue, doing business in Texas with a Texas citizen, and because the events giving rise to the causes of action occurred, all or in part, in Texas.

8.     Venue is proper in this district and division because all or a substantial part of the events or omissions giving rise to the claims occurred in this district and division.  Accordingly, pursuant to 28 USC § 1391(b) venue is proper in this district and division.

## IV.
### FACTS COMMON TO ALL CLAIMS

9.     Ancor is a private investment firm with 28 years of investing in middle market, private companies through buyout arrangements.  Ancor generally buys out a substantial portion of entrepreneurs and founders of these companies who are looking to "take chips off the table." Ancor generally brings private equity groups to the transaction who will invest in the companies alongside Ancor.  For finding and structuring the transaction, Ancor receives certain fees at closing, certain fees to manage the acquired company, and a "promote interest" which is an additional ownership percentage in the acquired company.  Ancor then implements management and operational plans that will, with the benefit of the new infusion of capital, grow the business of the company.  All of this is done with an eye toward either realizing larger revenues from the company upon its growth or an increase in the valuation of the company upon resale.

### Ancor Finds an Investment Opportunity: ICON and NexGen

10.     Recognizing the developing need for small electric vehicles that could navigate both the golf courses and the streets of retirement communities, ICON developed a "golf car." ICON designed a small "golf cart like vehicle" with a 4kW AC motor, a Toyota controller, 4

ORIGINAL COMPLAINT--Page 3

wheel disc brakes, 4 wheel independent suspension, a high speed transactual ratio, LED headlights and running lights, and upgraded wheels and tires. To ensure the "street legal" status of its vehicles, ICON became a US licensed auto manufacturer capable of issuing VIN numbers for its vehicles. Competing golf cart manufacturers had no such status or ability. A final critical element to making the "golf car," a vehicle that will operate both on the golf course and on city streets, was improving the vehicle's range. Improving the vehicle's range involved developing a superior battery. So ICON partnered with NexGen to develop a lithium ion battery to complete the superior product, the "golf car."

11.     While ICON was developing the "golf car," NexGen was building a success story of its own. NexGen had developed a lithium ion battery for golf carts that had a longer charge life and a 75% weight reduction over most other golf cart batteries. NexGen had developed a battery that would charge five times faster than a lead-acid battery and would last 10 times longer than a lead-acid battery. The primary benefit over the traditional golf cart battery was no more messy acid leaks or corroded connections. NexGen lithium batteries were the best batteries on the golf cart market. But its partnership with ICON would take NexGen to the next level.

12.     In early January of 2020, Randy Keene, the President of Ancor, met with Roy Williams and Terry Trekas, the two owners of both ICON and NexGen. The purpose of the meeting was to solicit an investment in ICON and NexGen that would allow its owners to take money off the table and provide capital to grow the business (the "Transaction"). Ancor proposed a total valuation of the company of $25 million and proposed to acquire 51% of the outstanding membership units in each company. Williams and Trekas were interested. So, on January 17, 2020, Ancor, on the one hand, and ICON and NexGen, on the other, entered into a letter of intent regarding the Transaction (the "ICON LOI").

**ORIGINAL COMPLAINT**--Page 4

13.   The ICON LOI provided that Ancor would form a new entity ("NewCo") to acquire ICON and NexGen.  The current owners of ICON and NexGen would roll their equity in those companies forward into NewCo, and Ancor would invest its funds in Newco for the purposes of paying the current equity owners for their 51% interests.  Ancor would also line up credit facility to provide the money to grow the businesses of ICON and NexGen.  Ancor made it clear that it would bring other investors to the table to invest in ICON and NexGen in the Transaction.

14.   The ICON LOI also provided that Ancor would receive a closing fee in cash equal to the greater of 2% of the enterprise value or $500,000 and an annual management fee in the amount equal to the greater of 5% of EBITDA or $250,000.  The ICON LOI also provided that in the event of a subsequent sale or liquidity event for NewCo, the proceeds would be distributed as follows: (1) first, the investors would receive all of their invested funds back, (2) next, the investors would be paid 8% preferred return on the amount they had invested, (3) then, Ancor would receive 20% of the amount distributed to the investors on their "preferred return," and (4) finally, all remaining proceeds would be distributed pro-rata 80% to the investors and 20% to Ancor.  The amounts paid to Ancor in Steps 3 and 4 of the distribution (the "20 % Promote Interest") was given to Ancor for being the "Sponsor" of the Transaction, the party that structured the Transaction and brought the investors in NewCo to the Transaction.

15.   Upon signing the letter of intent, Ancor intensified its due diligence on the project for the investors it would bring to the Transaction.  Ancor enlisted First West, an investigative company, to do background due diligence on the owners and key employees at ICON and NexGen.  Ancor retained Baker Tilly, a national accounting firm, to begin the financial and market review of the companies.  Ancor retained an environmental company to do the environmental review and due diligence.  And Ancor retained legal counsel to begin reviewing

the critical legal documents of ICON and NexGen and to form NewCo and other new companies by which the Transaction would be accomplished. All of these professionals would be extremely expensive.

16. During this time period, Ancor also undertook other efforts that would make ICON and NexGen an appealing investment for private equity groups. Ancor created "the book," the marketing brochure that would be given to potential investors to get them interested in the Transaction. Ancor began the process of lining up a senior debt lender to provide the money for growth of the business. Ancor began to develop the business plans for the growth of the business and the more efficient operations of the company. In short, Ancor unleashed its full energies and business acumen on making ICON and NexGen attractive investment opportunities.

17. An important aspect in making ICON and NexGen attractive investment opportunities was expanding their business beyond the Southeast (primarily Florida). Pursuant to its relationship with ICON and NexGen, Ancor acted as business consultant and partner in expanding ICON's and NexGen's geographical footprint into Texas and Arizona, two key states given the target market of the product. To that end, Ancor met with the two people that ICON and NexGen were going to associate with for the expansion into Texas and Arizona. Ancor assisted ICON and NexGen in the negotiations for the financial arrangements and profit sharing arrangements of these two individuals. Ancor toured and evaluated the companies' potential facilities in these territories. Indeed, Ancor's assistance to ICON and NexGen in their planning and expansion into Texas and Arizona was so significant that Williams commented to Keene on several occasions, "You have more than earned your fees by the way you have helped us structure Texas and Arizona."

### Ancor Brings Landon into the Transaction

18. In February of 2020, Ancor approached Landon to see if it would want to invest

in ICON and NexGen alongside Ancor.  Landon is a U.S. company formed by a wealthy family from London, England, to make investments in the U.S.  Upon reviewing Ancor's information regarding ICON and NexGen, Landon was keenly interested in participating in the investment.  Indeed, Landon wanted to provide all of the equity in the Transaction except that which would be provided by Ancor.  So, on February 25, 2020, Landon entered into a letter of intent to participate in the Transaction with Ancor (the "Landon LOI").

19.     The Landon LOI reiterated that Ancor would receive a closing fee in cash equal to the greater of 2% of the enterprise value or $500,000.  The Landon LOI added that Ancor would be entitled to a closing fee in cash equal to 1% of the enterprise's value of any future add-ons to the acquisition.  Furthermore, the Landon LOI confirmed that Ancor would be entitled to receive the annual management fee in the amount equal to the greater of 5% of EBITDA or $250,000.  And finally, the Landon LOI reiterated that Ancor would receive its 20% Promote Interest.

20.     In the Landon LOI, Landon and Ancor agreed not to enter into any transaction with ICON and NexGen without the participation of the other during the due diligence period of the Transaction.  If Landon decided not to move forward with the Transaction for any reason, it was obligated to notify Ancor promptly.  In such case, Ancor was free to pursue the Transaction with other investors on whatever terms Ancor deemed appropriate.  The Landon LOI also stated:

> Landon shall not, directly or indirectly, enter into any agreement or transaction (including the Transaction) with the Target [ICON and NexGen] at any time unless it obtained the prior written consent of Ancor and simultaneously provided Ancor all of the payments, reimbursements and/or other consideration provided for in this Agreement [the Landon LOI], including Section 9 below.

21.     In Section 9 of the Landon LOI, Landon agreed that (a) if the Transaction was consummated, then Newco would reimburse Ancor for all of its out of pocket expenses and all third party costs related to the Transaction, but (b) if the Transaction was not consummated by

**ORIGINAL COMPLAINT**--Page 7

the parties, then Landon was to immediately, upon request from Ancor, reimburse Ancor for 80% of all third parties costs incurred in connection with the Transaction.

22.     With Landon in tow as an investor, Ancor continued to develop the Transaction. Ancor continued its due diligence on ICON and NexGen, which Ancor now shared with Landon. Ancor continued developing its plan for growth for the companies and its plan to manage the growth for the company, which Ancor also shared with Landon.    Ancor finalized its arrangements with Cadence Bank to provide a $6,000,000 operating line of credit for the companies.  By July of 2020, Ancor was poised to close the Transaction, but ICON and NexGen were growing restless.

### The Transaction Falls Apart

23.     ICON's and NexGen's sales had continued to increase dramatically since signing the ICON LOI.  It appeared that the aging population's interest and need for "golf cars" was as great as everyone had hoped.  Even the COVID-19 pandemic had no deterrent effect on ICON's and NexGen's sales.  But the success of the company had made Williams and Trekis greedier.

24.     On July 25, 2020, the parties (Ancor, Landon, ICON and NexGen) had an "all hands meeting" to prepare for the closing.  Williams was bragging about the new dealerships he had signed up to increase sales even further.  Final tasks were assigned to the lawyers, accountants and other professionals, and everyone seemed headed toward a closing.  But that meeting would be the last time Ancor spoke to Williams or Trekas for several weeks.

25.     On August 5, 2020, Randy Keene received a call from Mike Parish of Global Growth Partners.  Global Growth Partners had introduced ICON and NexGen to Ancor.  Parish informed Keene that Williams had been complaining about Ancor's fees and what now seemed like a low valuation of the companies.  Keene specifically asked Parish if Williams was backing away from the Transaction.  "No," Parish replied, "he specifically told me he is not backing

<u>ORIGINAL COMPLAINT</u>--Page 8

away from the deal." But another week went by and still no word directly from Williams or Trekas.

26. On Friday, August 14, 2020, Ancor was surprised by a letter from ICON's and NexGen's counsel, announcing that "ICON has elected not to move forward with the sale to Ancor." The letter was dated August 13, 2020. The following Monday, Randy Keene reached out to Mike Ruch of Global Growth Partners to see what was going on. Ruch had no explanations for Keene. All he could say was, "It looks like the deal is dead."

**Landon, Icon and NexGen Go Behind Ancor's Back**

27. On Tuesday, August 17th, Keene finally reached Williams. It had been more than three weeks since anyone at Ancor had spoken to Williams or Trekas. Keene, of course, wanted to know what happened and wanted to know if there was a chance of salvaging the Transaction. Keene even inquired as to whether Williams and Trekas would still do the deal at a higher valuation. Williams advised Keene that ICON and NexGen were going to grow the companies on their own. "I have decided," Williams told Keene, "that I am not interested in selling Ancor 51% of the companies, not at any price."

28. On Wednesday, August 18th, Williams had dinner with Eric Royce, the CEO of Continental Battery Company. At that dinner, Williams bragged to Royce that he had reached a deal to sell 30 % of ICON and NexGen to a "London group" based on a $50,000,000 valuation of the companies.

29. On August 21, 2020, Keene called Williams one more time to see if he could salvage the Transaction. Williams again told Keene he was not interested in doing a transaction with Ancor. What Williams said next, though, stunned Keene. "I have another deal lined up with a valuation of the company at $50,000,000," said Williams. "You have another transaction lined up already?" Keene inquired. At that moment, Williams knew he had said too much and he

began to waffle.  Yes.  No.  Yes.  Williams sounded nervous and unsure, and he abruptly ended the conversation.   Keene immediately called Chris Sullivan of Landon Capital.  "He has another deal lined up already," Keene told Sullivan.  "That is wild," Sullivan responded.

30.    On September 1, 2020, Ancor notified Landon Capital that Ancor would be pulling together its out of pocket costs from conducting the due diligence and preparing for the Transaction so that Landon could pay Ancor 80% of these costs as Landon had agreed to do. After gathering up all of the costs, and seeing that they had come to over $426,000, Keene had a thought.   He thought maybe ICON's and NexGen's new investors would be interested in purchasing the due diligence and other Transaction materials; so, Keene called Williams.  "Your new investors could use this information," Keene offered, "and I can sell it to them cheaper and faster than they can recreate it."  "We won't need it," Williams replied.  Again, Keene was stunned.  Why wouldn't they need it?

31.    Keene called Sullivan again to tell him that Keene had tried to sell the due diligence and transactional materials to Williams' new investor to save Landon the obligation of having to pay Ancor 80% of the costs.  "I wonder why he wouldn't take it?" asked Keene. Sullivan replied, "I don't know.  But he is coming to see me next week." "Really?" Keene replied.  "Let me know what he wants."

32.    On September 18th, Keene called Sullivan again to see how the meeting with Williams went.  "What did he want?" Keene asked.  "He wants us to make him a loan for $10,000,000," said Sullivan, "but we are an equity investor.  I don't think Landon is interested in making a loan."  When Keene pressed Sullivan as to what Landon intended to do, Sullivan stated that he was going to discuss it with Rupert Edis, the Landon family rep in London.

33.    On September 28th, Keene called Sullivan one more time.  In this conversation, Sullivan finally revealed to Keene what Ancor had suspected since August 21st.  Sullivan finally

ORIGINAL COMPLAINT--Page 10

told Keene, "We offered Williams $15,000,000 for 30% of the companies based on a $50,000,000 valuation."  Keene specifically asked if Ancor would be a part of the transaction. Sullivan told him that Ancor could "invest" alongside Landon but that neither ICON nor Landon was interested in paying Ancor any of the fees or the promote interest to which they had previously agreed.  Keene politely told Sullivan that did not work for Ancor; so, Sullivan asked him to think about what would work.  As Keene hung up the phone, he was incredulous.  Even though he had a suspicion that Landon, ICON and NexGen had gone behind Ancor's back and struck a deal, he still found it very hard to believe.

### Ancor Tries to Work It Out; Landon Gives Ancor "the Heisman"

34.    On October 12, 2020, Ancor notified Landon in an email that "Ancor remains enthusiastic about partnering with ICON and Landon to consummate a transaction at the new value level you have negotiated.  If [Ancor] were to continue to participate, we would need the economics to Ancor to mirror closely the terms previously agreed.  Those terms were a promote of 20% of the increase in equity value, a transaction fee of 2% of the enterprise value and a management fee of 5% of EBITDA."  In that same email, Ancor also offered to "provide a path for Landon to continue its plan to invest in ICON without Ancor."  To accommodate this "path" for Landon, Ancor offered to discount the fees that it would have otherwise received on the Transaction, but Ancor made it clear that it expected that all of Ancor's due diligence and Transaction costs would need to be reimbursed in full in light of the fact that Landon would be the only beneficiary of these costs.  Landon did not respond to this offer.

35.    Ancor did not hear from Landon again until December 1, 2020.  On that date, Sullivan sent Keene an email that merely stated "Please see letter attached regarding ICON.  If acceptable to Ancor, please execute and return a scanned copy with wiring instructions [sic] and we will process the payment by Friday."

ORIGINAL COMPLAINT--Page 11

36.    There was no "letter" attached to the email.  All that was attached was a Waiver and Release Agreement.  In the Waiver and Release Agreement, Ancor was releasing all interest in the transaction Landon was about to enter into with ICON and NexGen in return for a payment of only $400,000, an amount that did not even cover the third party fees and other costs that Ancor had incurred in the due diligence and work leading up to what would have been the closing of the Transaction.  As if to give Ancor one more kick in the face, the email ended by stating "For the avoidance of doubt, Landon Capital Partners has no obligation to make the attached proposed payment to Ancor for the failed ICON transaction expenses [sic] and Ancor should interpret the goodwill offer from Landon Capital Partners as an accept now or reject forever proposal."

37.    Ancor was once again stunned.  It was difficult to believe that Landon was going to blatantly disregard its contractual obligations.  It was also difficult to believe that ICON and NexGen had gone behind Ancor's backs to negotiate a separate deal with Landon.  Never in Ancor's 28 years of doing these kinds of deals had anyone ever gone behind its back and blatantly violated non-circumvention agreements.

38.    Ancor responded to the December 1st email by indicating that Ancor was not willing to sign the Waiver and Release.  Ancor pointed out that all Landon was offering to do was reimburse Ancor for a portion of the professional fees Ancor had incurred to prepare the investment for Landon.  Ancor pointed out that Landon was already obligated to do that.  Ancor reminded Landon that Landon had agreed to NOT do the transaction without Ancor unless Ancor had specifically consented.  And Ancor reminded Landon of the terms on which Ancor was willing to consent.  Ancor ended its communication by indicating that it was still willing to resolve the matter on the terms that it had proposed back in October.

ORIGINAL COMPLAINT--Page 12

39.    In response to Ancor's final communication, Landon responded curtly that "Landon Capital Partners has no obligation to pay or provide Ancor with any of the items you requested …."  And with that communication, Landon closed on an investment in ICON and NexGen the very next day.

## V.
### CAUSES OF ACTION

**Count 1:  Breach of Contract (against Landon)**

40.    Ancor incorporates by reference each and every allegation contained in Paragraphs 1-39 above, as if the same were set forth in full herein.

41.    The Landon LOI specifically states that sections 8, 9, 10 and 11 of the letter of intent "constitute binding agreements" between Ancor and Landon.  Section 11 specifically states that these four sections "shall survive the termination of this Letter of Intent."  Thus, the following obligations of the Landon LOI were binding agreements that survived the termination of the Landon LOI:

- the obligation of Landon to not enter into any agreement or transaction with ICON and/or NexGen at any time without the prior written consent of Ancor;

- the obligation to simultaneously provide Ancor all of the payments, reimbursements and or other consideration Ancor was entitled to under the Landon LOI; and

- the obligation to reimburse Ancor for all of out of pocket expenses and third party costs related to the Transaction was binding and survived any termination of the Landon LOI.

42.    By entering into a transaction with ICON and NexGen without Ancor's permission, and by failing to pay Ancor a transaction fee of 2% of the enterprise value and a

management fee of 5% of EBITDA, and failing to provide for Ancor's 20% promote interest on the ICON and NexGen transaction, Landon has breached its binding agreements with Ancor. Furthermore, buy not reimbursing Ancor the $426,452.59 in out of pocket expenses and third party costs incurred by Ancor related to the Transaction, Landon has breached its binding agreements with Ancor.

43.     As a result of Landon's breach of the Landon LOI, Ancor has been damaged in an amount to be determined at trial, but not less than $2,676,452.59 (consisting of $426,452.59 in out of pocket expenses and third party costs incurred by Ancor in connection with the Transaction, $1,000,000 that Ancor was to receive as a closing fee on the Transaction, and $1,250,000 that Ancor was to receive in management fees over the 5 year period in the business plan), plus pre- and post-judgment interest on such amounts and costs and attorneys' fees incurred in this action.

**Count 2: Tortious Interference with a Contract and a Business Relations (against Landon, ICON and NexGen)**

44.     Ancor incorporates by reference each and every allegation contained in Paragraphs 1-43 above, as if the same were set forth in full herein.

45.     Ancor had a valid and binding contract with Landon in the form of Sections 8, 9, 10 and 11 of the Landon LOI.  ICON and NexGen willfully and intentionally interfered with that contract by, among other things, going behind Ancor's back and entering into a transaction with Landon that violated Ancor's contract with Landon.

46.     Ancor had a business relationship with ICON and NexGen in the form of the ICON LOI.  Indeed, Ancor's business relationship with ICON and NexGen had a reasonable probability of turning into a very lucrative contractual relationship.  Landon willfully and intentionally interfered with that business relationship by, among other things, entering into a contact with ICON and NexGen to the exclusion of Ancor.

ORIGINAL COMPLAINT--Page 14

47.    As a result of the Defendants' tortious interference, Ancor has been injured in that it lost its transaction fee of 2% of the enterprise value, its management fee of 5% of EBITDA, and its 20% promote interest on the ICON and NexGen transaction.  Furthermore, Ancor was further injured in that it was not paid its out of pocket expenses and third party costs incurred in connection with the Transaction.  These damages are in an amount to be determined at trial, but not less than $2,676,452.59.

**Count 3: Breach of Duties of Good Faith and Fair Dealing (against Landon, ICON and NexGen)**

48.    Ancor incorporates by reference each and every allegation contained in Paragraphs 1-47 above, as if the same were set forth in full herein.

49.    As a result of the Landon LOI, Landon owed Ancor an implied duty of good faith and fair dealing.  This duty, at a minimum, prevented Landon from going behind Ancor's back, doing a separate transaction with ICON and NexGen to the exclusion of Ancor.

50.    Similarly, as a result of the ICON LOI, ICON and NexGen owed Ancor an implied duty of good faith and fair dealing.  This duty, at a minimum, prevented ICON and NexGen from going behind Ancor's back, doing a separate transaction with Landon to the exclusion of Ancor.

51.    As a result of the Defendants' breaches of their duty of good faith and fair dealing, Ancor has been injured in that it lost its transaction fee of 2% of the enterprise value, its management fee of 5% of EBITDA, and its 20% promote interest on the ICON and NexGen transaction.  Furthermore, Ancor was further injured in that it was not paid its out of pocket expenses and third party costs incurred in connection with the Transaction.  These damages are in an amount to be determined at trial, but not less than $2,676,452.59.

**Count 4: Fraud by Non-Disclosure/Omission (against Landon, ICON and NexGen)**

52.     Ancor incorporates by reference each and every allegation contained in Paragraphs 1-51 above, as if the same were set forth in full herein.

53.     Landon, ICON and NexGen concealed from and/or failed to disclose material facts to Ancor which they had a duty to disclose, including, but not limited to, the fact that Landon had no intention of consummating the Transaction, the fact that Landon, ICON and NexGen were negotiating a new deal without Ancor (and the terms that were being negotiated), and the fact that Landon, ICON and NexGen entered into a new transaction without Ancor.

54.     Landon, ICON and NexGen knew that Ancor was unaware of the undisclosed facts and that Ancor did not have an equal opportunity to discover them, but Landon, ICON and NexGen deliberately kept these facts from Ancor.

55.     Landon, ICON and NexGen new that the undisclosed facts were material to Ancor.  Landon, ICON and NexGen intended for Ancor to act on and/or rely on these undisclosed facts by continuing to accumulate and share the due diligence with Landon and continuing to develop a business plan for expansion and growth and by assisting ICON and NexGen in their pre-closing expansion efforts.  Furthermore, Ancor did rely upon their omissions and concealment, by, among other things, continuing to accumulate and share the due diligence with Landon and continuing to develop a business plan for expansion and growth and by assisting ICON and NexGen in their pre-closing expansion efforts.

56.     As a result of Landon, ICON and NexGen's fraud by non-disclosure, Ancor has been injured in that it lost its transaction fee of 2% of the enterprise value, its management fee of 5% of EBITDA, and its 20% promote interest on the ICON and NexGen transaction.  Furthermore, Ancor was further injured in that it was not paid its out of pocket expenses and

ORIGINAL COMPLAINT--Page 16

third party costs incurred in connection with the Transaction.  These damages are in an amount to be determined at trial, but not less than $2,676,452.59.

**Count 5: Conspiracy (against Landon, ICON and NexGen)**

57.     Ancor incorporates by reference each and every allegation contained in Paragraphs 1-56 above, as if the same were set forth in full herein.

58.     Landon, ICON and NexGen entered into a combination of two or more persons whose object was to accomplish an unlawful purpose.  Specifically, Landon, ICON and NexGen combined to breach their duties to Ancor and go behind Ancor's back to enter into a transaction together to the exclusion of Ancor.

59.     Landon, ICON and NexGen had a meeting of the minds on the aforementioned objective and/or course of action and then proceeded to commit an unlawful overt act to further their objective and/or course of action by, among other things, breaching their contracts with Ancor, tortiously interfering with Ancor's contracts and business relations, and breaching their duties of good faith and fair dealing, all by going behind Ancor's back and entering into a transaction together without Ancor.

60.     Ancor suffered injury as a result of Defendants' conspiracy, and the Defendants should be held jointly and severally liable for the acts of one another.

61.     As a result of the Defendants' conspiracy, Ancor has been injured in that it lost its transaction fee of 2% of the enterprise value, its management fee of 5% of EBITDA, and its 20% promote interest on the ICON and NexGen transaction.  Furthermore, Ancor was further injured in that it was not paid its out of pocket expenses and third party costs incurred in connection with the Transaction.  These damages are in an amount to be determined at trial, but not less than $2,676,452.59.

**Count 6: Declaratory Judgment Action (against Landon, ICON and NexGen)**

62.     Ancor incorporates by reference each and every allegation contained in Paragraphs 1-61 above, as if the same were set forth in full herein.

63.     In light of the forgoing facts, Ancor requests that this Court examine all necessary evidence and instruments and enter a declaration that Ancor is entitled its 20% Promote Interest; more specifically, that upon a subsequent sale or liquidity event for ICON, NexGen or any new entity with they may have formed in their transaction with Landon, the proceeds be distributed as follows: (1) first, to the investors until they receive all of their invested funds back, (2) next, to the investors until an 8% preferred return has been paid on the amount they had invested, (3) then, to Ancor up to an amount that equals 20% of the amount distributed to the investors on their "preferred return," and (4) finally, all remaining proceeds would be distributed pro-rata 80% to the investors and 20% to Ancor.

64.     As a result of the actions of Landon, ICON and NexGen, Ancor was forced to file this claim for declaratory judgment and is entitled to its costs and attorneys' fees.

**Count 7: Exemplary Damages (against Landon, ICON and NexGen)**

65.     Ancor incorporates by reference each and every allegation contained in Paragraphs 1-64 above, as if the same were set forth in full herein.

66.     Ancor's damages have resulted from the fraudulent, malicious, wanton and willful conduct and/or gross negligence of Landon, ICON and NexGen, which entitles Ancor to recover exemplary and/or punitive damages.

67.     Ancor seeks exemplary damages in an amount sufficient to serve as a deterrent to the wrongful and/or unconscionable conduct displayed by Landon, ICON and/or NexGen.

**Count 8: Attorney's fees (against Landon, ICON and NexGen)**

68.     Ancor incorporates by reference each and every allegation contained in Paragraphs 1-65 above, as if the same were set forth in full herein.

69.     As a result of the actions of Landon, ICON and NexGen, it was necessary for Ancor to retain the services of Travis Law Group, a Professional Corporation, to collect the damages that Ancor is rightfully owed and to obtain the declaratory judgment set forth in Count 6 above.  Ancor, therefore, seeks a recovery from Landon, ICON and NexGen for the reasonable and necessary costs and attorneys' fees incurred by Ancor in this action.

## VI.
### JURY DEMAND

70.     Ancor hereby demands that all issues in this action that can be tried by a jury be tried by a jury.

## VII.
### PRAYER FOR RELIEF

Considering the foregoing premises, Plaintiff Ancor Partners, Inc. requests that this Court enter judgment against Defendants Landon Capital Partners, LLC, ICON EV, LLC, and NexGen Lithium Batteries, LLC, jointly and severally, as follows:

A.     Awarding Ancor Partners, Inc. an amount to be determined at trial, but not less than $2,676,452.59 (consisting of $426,452.59 in out of pocket expenses and third party costs incurred by Ancor in connection with the Transaction, $1,000,000 that Ancor was to receive as a closing fee on the Transaction, and $1,250,000 that Ancor was to receive in management fees over the 5 year period in the business plan);

B.     Awarding Ancor Partners, Inc. a declaration that it is entitled to a 20% Promote Interest calculated as set out in the ICON LOI and Landon LOI on any subsequent sale or other capital transaction or liquidity event involving Landon Capital Partners, LLC, ICON EV, LLC

<u>ORIGINAL COMPLAINT</u>--Page 19

and NexGen Lithium Batteries, LLC, and/or any other entities that were created in the transaction among Landon Capital Partners, LLC, ICON EV, LLC and NexGen Lithium Batteries, LLC.

C.    Awarding Ancor Partners, Inc. its attorney's fees in filing and prosecuting this action; and,

D.    Awarding Ancor Partners, Inc. such other relief to which this Court finds that Ancor Partners, Inc. is justly entitled under law or equity.

Respectfully submitted,

*/s/ Jeffrey M. Travis*_____
**Jeffrey M. Travis**
Texas State Bar No. 20191600
E-mail: Jeff@travislaw.com
**Jared C. Inman**
Texas State Bar No. 24078716
Email: Jared@travislaw.com

**TRAVIS LAW GROUP**
A Professional Corporation
One Galleria Tower, Suite 1700
13355 Noel Road
Dallas, Texas 75240
Telephone:  (972) 934-4100
Facsimile:  (972) 934-4101

**ATTORNEYS FOR PLAINTIFF**